## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **TARA MOORE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action File** |
| **vs.** | : | |
| | : | **No. _____** |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## COMPLAINT FOR DAMAGES

COMES NOW Tara Moore (hereafter "Plaintiff" or "Ms. Moore") and files this Complaint for Damages against the United States of America (hereafter "United States" or "Defendant") on claims of negligence pursuant to 28 U.S.C. § 1346 et seq. (Federal Tort Claims Act) as follows:

### PARTIES

### *Plaintiff*

1.      Ms. Moore is a female federal inmate remanded into the custody of the Federal Bureau of Prisons (hereafter "BOP") and housed at FCI Aliceville in Aliceville, Alabama (hereafter "FCIA") beginning in 2015.  While incarcerated at FCIA, Officer Robert D. Smith (hereafter "Smith") sexually harassed, assaulted and raped Ms. Moore on numerous occasions.  Ms. Moore timely filed a notice and

1

demand to the Federal Bureau of Prisons as required by 28 U.S.C. § 1346. A true and accurate copy of the notice and demand is attached hereto as Exhibit A.

## *Defendant*

2.      Defendant United States of America is a sovereign nation subject to liability and damages for the wrongful conduct of its employees and agencies under the Federal Tort Claims Act. The United States may be served with process pursuant to Fed. R. Civ. Pro. 4(i)(1) as follows:

> United States of America
> Prim F. Escalona (or designee)
> United States Attorney's Office
> Northern District of Alabama
> 1801 4th Avenue North
> Birmingham, Alabama 35203
>
> *Certified mail copy to*:
>
> Mr. Merrick B. Garland
> Attorney General of the United States
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, D.C. 20530

3.      Officer Smith was a resident of the State of Alabama who was employed by the BOP as a correctional officer working at FCIA. Officer Smith pled guilty to sexual abuse and rape of Ms. Moore while she was incarcerated at FCIA. A true and accurate copy of Officer Smith's guilty plea is attached hereto as Exhibit B.

4.      FCIA wardens, associate wardens, executive staff, department heads, supervisors, counselors, professional service providers and prison management (hereafter "FCIA Management Team") were grossly negligent in the management, supervision and retention of male correctional officers at FCIA engaged in the sexual harassment and abuse of female inmates.

5.      The Special Investigative Services Unit ("SIS") assigned to FCIA was responsible to investigate any alleged criminal activity involving staff members or inmates.  SIS members were grossly negligent and derelict in their duties to manage, supervise and investigate male officers at FCIA engaged in the sexual harassment and abuse of female inmates.

6.      The Office of Internal Affairs ("OIA"), the Office of Inspector General ("OIG"), the U.S. Department of Justice ("DOJ") and many other special agents and supervisory attorneys were responsible for the investigation and prosecution of male correctional officers sexually abusing female inmates at FCIA.  These agencies failed to timely investigate and prosecute the criminal activity perpetrated by the male correctional officer identified below.  (SIS, OIA, OIG and DOJ are collectively referred to herein as the "Prison Investigative Agencies").

### JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1346.  Specifically, Ms. Moore brings her claims under 28

U.S.C. § 1346 et seq. (Federal Tort Claims Act) as it involves liability of the United States of America reserved to federal courts.

8.    This Court has personal jurisdiction over Defendant United States of America pursuant to 28 U.S.C. § 1346 et seq. (Federal Tort Claims Act) and for committing United States Constitutional violations within the State of Florida.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) as the acts and omissions set forth herein occurred within this federal judicial district.

## FEDERAL BUREAU OF PRISONS

10.    The Federal Bureau of Prisons ("BOP") is a United States federal law enforcement agency responsible for the custody of individuals who have violated federal laws.  The BOP's stated mission is to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure…"[1]  The BOP employs over 35,000 individuals at 122 institutions across the country.  The BOP is currently responsible for the custody and care of over 13,000 female inmates incarcerated at 27 separate BOP facilities.

11.    Despite its stated mission, the BOP has created and maintained a sanctuary for male correctional officers to sexually assault and abuse female inmates. The sexual abuse of female prisoners under BOP control is rampant but

---

[1] https://www.bop.gov/about/agency/ (emphasis added)

4

goes largely unchecked as a result of cultural tolerance, orchestrated cover-ups and organizational reprisals of inmates who dare to complain or report sexual abuse.

12.    This systemic misconduct within the BOP was the subject of a recent U.S. House of Representatives investigation for the Committee on Oversight and Government Report.  The nine-page report concluded that misconduct by prison officials is "largely tolerated or ignored altogether"[2] allowing officials to operate outside of the rules.  The committee reviewed specific cases where "individuals deemed responsible for misconduct were shuffled around, commended, awarded, promoted or even allowed to retire with a clean record and full benefits before any disciplinary action could apply."[3]  The U.S. Senate Permanent Subcommittee on Investigations for Homeland Security and Governmental Affairs conducted its own investigation and recently finalized a public report detailing a multitude of failures within the BOP.[4] The report finds that the BOP has fostered a "culture of sexual abuse" of female inmates and concludes with the following:

> BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result.

---

[2] https://republicans-oversight.house.gov/wp-content/uploads/2019/01/Memo-to-Chairman-Russell-re-BOP.pdf
[3] *Id*.
[4] https://www.hsgac.senate.gov/imo/media/doc/2022-12- 13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prison s.pdf 9

These public findings and conclusions support and bolster the allegations in the Complaint and remove any doubt that the failures at FCIC were simply discretionary decisions made by low level employees.

## **PRISON RAPE ELIMINATION ACT**

13.    The Prison Rape Elimination Act ("PREA") was signed into law by President Bush in 2003 and applies to all federal facilities managed by the BOP. P.L. 108-79.  PREA's goal is to deter the sexual assault of prisoners and to curb prison rape through a zero-tolerance policy.

14.    Because the female inmates are fully dependent on the correctional officers for basic necessities and privileges, all sexual contact, with or without the consent of the inmate, is classified as abuse.  Sexual abuse and sexual harassment are defined in section 115.6 of the Act as follows:

> *Sexual abuse* of an inmate, detainee, or resident by a staff member, contractor, or volunteer includes any of the following acts, *with or without consent* of the inmate, detainee, or resident:
>
> *(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;*
>
> *(2) Contact between the mouth and the penis, vulva, or anus;*
>
> *(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*
>
> *(4) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official*

*duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*

*(5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*

*(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1)-(5) of this section;*

*(7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, and*

*(8) Voyeurism by a staff member, contractor, or volunteer.*

*Sexual harassment includes:*

*(1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and*

*(2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.*

 (emphasis added).

15.    As mandated by PREA, the BOP conducts annual PREA audits ("Audits") at each federal prison facility. The annual Audits for FCIA are <u>materially</u> incomplete as the auditors failed to interview any female inmates that were involved in or witness to PREA violations.

7

16.     The reports suggest that these female inmates were not available for interview as they had been transferred to another prison facility.  The failure to interview victims of PREA violations undermines the Audit results and incentivizes FCIA to transfer victims of sexual abuse rather than cooperate with a thorough PREA investigation.  By transferring victims of sexual abuse, FCIA shields itself from legitimate investigation and suppresses complaints by punishing the victims.

17.     The FCIA transfer policy also demonstrates the BOP's failure to put the rights of the victims ahead of its own economic interest.  Before any BOP employee can be punished, transferred or reassigned for sexual abuse, administrators must carefully navigate the collective bargaining agreement.  In almost every instance, the collective bargaining rights of the employees outweigh the rights of the victim, and it is the victim that receives the full weight of punishment by transfer to another facility or other punitive measures.  In no other context are the rights of the sexually abused subordinated to the economic interests of the institution and the collective bargaining rights of the abusers.

## PROGRAM STATEMENT 3420.11

## STANDARDS OF EMPLOYEE CONDUCT

18.     Many of the BOP's policies are contained in documents titled "program statements" which set forth rules and procedures that all BOP employees are required to follow.

19.     Program Statement 3420.11 sets out the duties and responsibilities of all BOP employees. It requires that employees, "[A]s soon as practicable (but no later than 24 hours) report to their CEO (or other appropriate authority such as the Office of Internal Affairs or the Office of the Inspector General) any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation. Every employee is required to immediately report to management any act or omission by any person that could result in a breach of institution security. Failure by employees to follow these regulations and policy or any other Bureau policy or relevant regulation(s) could result in disciplinary action, up to and including removal."

20.     Program Statement 3420.11 (Standards of Employee Conduct) mandates that "[n]o employee shall engage in, or allow another person to engage in, sexual behavior with an inmate. There is never any such thing as consensual sex between staff and inmates."

21.     Program Statement 3420.11 states that BOP employees are subject to administrative action, up to an including removal, for any inappropriate contact, sexual behavior, or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime. Physical contact is not required to subject an employee to sanctions for misconduct of a sexual nature.

9

22.     Program Statement 3420.11 goes on to state that "Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened. Sexual contact is defined as the intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person. All allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution."

23.     Each new BOP employee, contractor, and volunteer must receive and sign a form acknowledging receipt of Program Statement 3420.11.

24.     Program Statement 5324.12 (Sexually Abusive Behavior Prevention and Intervention Program) concerning the prevention of, and intervention upon sexually abusive behavior, implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and provides guidelines to address prohibited and/or illegal sexually abusive behavior.

25.     Program Statement 5324.12 is the controlling BOP policy addressing the prevention of, and intervention upon, sexually abusive behavior. It is disseminated agency-wide and applies to all facilities operated by the BOP and every staff member working within each correctional facility.

26.     Program Statement 5324.12 lays out duties and responsibilities with respect to conduct for all BOP employees, and mandates particular staff and agency

reporting duties with respect to sexually abusive behavior, including concerning incidents or possible incidents of sexual abuse or sexual harassment: it mandates that "[a]ll staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or where appropriate, in accordance with the Program Statement 3420.11."

27. BOP policy requires the training of all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures.

### FCIA

28. FCIA is a federal prison facility operated by the BOP through the United States Department of Justice.

29. Female inmates at FCIA are segregated into distinct housing units with dormitory style cubicles for each inmate. Many inmates are afforded work, educational and vocational privileges within the complexes. Inmates are subject to daily "counts" but are given some basic freedoms to move and work on the complex.

30. FCIA employs correctional officers, facilities staff and management to oversee and operate the prison facility. The correctional officers are trained, managed, overseen and paid by the BOP through the United States Department of Justice serving "investigative or law enforcement" functions. The correctional

officers are federal employees subjecting the United States of America to liability for improper actions committed within the course and scope of their employment, under color of federal law, or in violation of specific federal statutes.

31.    Officer Smith was a known sexual predator to the FCIA Management Team and the Prison Investigative Agencies and was convicted of raping inmate R.R.L. in as early as 2018.  Upon information and belief, Officer Smith had been investigated for the rape of R.R.L. and others on numerous occasions prior to his rape of Ms. Moore in 2019.  The FCIA Management Team and Prison Investigative Agencies were well aware of the female inmates' reluctance to come forward with information on sexual abuse for fear of reprisal, including, but not limited to, transfer to a different facility, disciplinary segregation, loss of early release rights, detrimental write-ups, loss of work privileges, and interference with vocational skills programs.

32.    In fact, the FCIA Management Team instituted a policy whereby inmates complaining of mistreatment by prison officials were removed to a local county detention center or a special housing unit.  This relocation policy intentionally suppressed complaints of misconduct as the county facilities are higher levels of security and do not permit work details or vocational training.

33.    Despite the known issues of abuse, the FCIA Management Team granted Officer Smith unrestricted and unsupervised contact with Plaintiff.  Officer

Smith abused his position of authority to threaten and coerce Plaintiff into engaging in sexual activities and keep the abuse quiet for fear of immediate retaliation. Officer Smith used his access to personal history files, telephone call recordings, and personal emails giving him additional leverage to extract sexual favors and threaten the safety of Plaintiff.

### MS. MOORE

34.   Ms. Moore was incarcerated at Aliceville beginning in 2015. Three years later, she was assigned to work in the maintenance department where Officer Smith was the designated officer in charge with supervisory and management authority. Almost immediately, he began making sexually suggestive comments to Ms. Moore and engaged in a pattern of sexual harassment. The harassment quickly evolved into sexual assault as Officer Smith coerced, intimidated and demanded that Ms. Moore engage in sexual activities. In March 2019, Officer Smith forced Ms. Moore into his facilities office and forced her to engage in sexual intercourse. The harassment continued until Ms. Moore was transferred to a federal facility in Miami.

35.   In 2021, Ms. Moore was sent back to Aliceville and was again placed under the supervision of Officer Smith. In the summer of 2021, Officer Smith would purposely locate Ms. Moore in the unit, escort her to various facility closets, and engage in unwanted sexual touching and groping routinely inserting his fingers into her vagina.

36.     Ms. Moore did not consent or give permission to Officer Smith to touch her or engage in any sexual activity, nor could she have, as a matter of law.  As a result of the sexual assault and harassment from Officer Smith, Ms. Moore has suffered extensive psychological trauma, depression, pain and suffering, physical trauma and has been denied much needed medical care by the BOP in an obvious attempt to silence her complaints.  Ms. Moore demands compensation from the United States of America for this abuse in an amount to be determined at trial.

## COUNT I

## NEGLIGENCE

37.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-36 of this Complaint for Damages as if fully set forth herein.

38.     The FCIA Management Team and the Prison Investigative Agencies owed a duty to Plaintiff while incarcerated at FCIA to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure"[5] as mandated by the BOP.

---

[5] https://www.bop.gov/about/agency/ (emphasis added)

39.    The FCIA Management Team and the Prison Investigative Agencies breached their duties to Plaintiff by negligently supervising, managing and retaining Officer Smith during Plaintiff's incarceration at FCIA.

40.    The FCIA Management Team and the Prison Investigative Agencies breached their duties to Plaintiff by providing Officer Smith with <u>unrestricted</u> and <u>unsupervised</u> one-on-one access to Plaintiff while incarcerated at FCIA despite knowledge of his past sexual abuse and harassment of female inmates.

41.    The FCIA Management Team and the Prison Investigative Agencies breached their duties to Plaintiff by creating a system where victims of sexual abuse and harassment are punished for reporting the sexual misconduct of prison staff by transfer to more secure facilities, removal from educational and vocational programs, placement in special housing units, loss of early release rights, detrimental write-ups and loss of work privileges.

42.    The FCIA Management Team and the Prison Investigative Agencies breached their duties to Plaintiff by creating and maintaining an environment at the facility where sexual abuse of female inmates by prison officials is ignored and offending officers are not investigated, punished or removed from their positions of authority.

43.    The FCIA Management Team and the Prison Investigative Agencies breached their duties to Plaintiff under PREA as follows:

- Section 115.11 – failing to enforce zero tolerance policy as it related to the sexual abuse of Plaintiff and other inmates at FCIA.

- Section 115.13 – failing to supervise and monitor (video surveillance) one-on-one inmate/officer contact as it relates to the sexual above of Plaintiff by Officer Smith and other female inmates.

- Section 115.17 – hiring, promoting and retaining officers who "may" have had improper sexual contact including Officer Smith.

- Section 115.43 – punishing sex victims with involuntary segregated housing, loss of privileges and work permits.

- Section 115.61 – failing to report suspicion of sexual abuse as it related to the conduct of Officer Smith with female inmates including Plaintiff.

- Section 115.67 – failing to protect inmates from retaliation after reporting abuse.

- Section 115.76 – failing to discipline staff for sexual misconduct including Officer Smith.

44.    The FCIA Management Team and the Prison Investigative Agencies breached their duties to Plaintiff under its Program Statements as follows:

- Section 3340.11/12 – failing to report the sexual abuse of Plaintiff and other female inmates by Officer Smith allowing him to continue his criminal assaults and harassment; failing to stop the sexual abuse of female inmates by Officer Smith after notice and knowledge of prior assaults; and failure to train Officer Smith on the Program Statements and procure his signature certifying same.

45.    As a direct and proximate cause of the negligence outlined above, the FCIA Management Team and the Prison Investigative Agencies caused damage to

16

Plaintiff including psychological trauma, emotional distress, depression, physical trauma and pain and suffering.

46.    Plaintiff is entitled to damages from the United States of America under the Federal Tort Claims Act for the negligence of the FCIA Management Team and the Prison Investigative Agencies in an amount to be determined at trial.

**WHEREFORE**, Plaintiff requests that the Court:

1)    Grant judgment in favor of Plaintiff on her claim for Negligence against Defendant United States of America;

2)    Award damages to Plaintiff in amounts to be determined at trial;

3)    Grant Plaintiff a jury trial on all claims triable by jury;

4)    Grant Plaintiff her fees, expenses and attorneys' fees; and

5)    Grant such other and further relief the Court deems just and proper.

Respectfully submitted this 13th day of March 2024.

*/s/ J. Evans Bailey*
J. Evans Bailey (ASB-9995-J61B)
Attorney for Plaintiff

**OF COUNSEL**:
Rushton, Stakely, Johnson & Garrett, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
(334) 206-3170
ebailey@rushtonstakely.com

17

/s/ Bryan E. Busch
Bryan E. Busch (*Pro Hac Vice*)
Georgia Bar No. 006055

**OF COUNSEL**:
BUSCH MILLS & SLOMKA, LLP
3000 Heritage Walk, Suite 304
Milton, GA 30004
(404)800-4062
bb@buschmills.com